## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.

MICROSOFT, INC., a Washington Corporation,

        Plaintiff,

vs.

OFFICE SOLUTIONS USA LLC, a Florida Limited Liability Company, and HENRIQUE COUTINHO TRAD, aka HENRIQUE TRAD SOUZA, an individual,

        Defendants.

### COMPLAINT

Plaintiff Microsoft Corporation ("Microsoft") brings this Complaint against Office Solutions USA LLC ("Office Solutions") and Henrique Coutinho Trad, aka Henrique Trad Souza ("Trad") (collectively, "Defendants"), alleging as follows:

### I. INTRODUCTION

1. This is an action for 1) contributory copyright infringement; 2) trademark infringement; 3) false designation of origin and false and misleading representations and descriptions of fact; and 4) trade dress infringement.

2. Defendants are prolific distributors of black market access devices to Microsoft software that they unlawfully advertise to consumers as genuine software. As a major part of their sales, Defendants instruct their customers to acquire, install, and activate copies of Microsoft software with the access devices. This software is either from counterfeit download sites or Microsoft sites that require the purchase of licensed software.

3. Defendants use Microsoft's trademarks and trade dress in their marketing and sales materials without authorization to deceive consumers about the characteristics, origin, and authenticity of the software. In particular, Defendants deceive their customers into believing that this software is legally licensed for them to use, when it is not.

4.  Defendants' black market access devices include product activation keys which are uncoupled from the genuine, licensed Microsoft software they were intended and authorized to activate and sold by Defendants on a "stand-alone" basis separate from the original licensed software ("decoupled product keys").  Defendants' black market access devices also include tokens for software pre-installed on Original Equipment Manufacturer ("OEM") devices and only authorized for use by specific OEMs for devices in China ("OEM tokens").  Lastly, Defendants' black market access devices include credentials for unlicensed Office 365 cloud accounts that were created and distributed without authorization from Microsoft ("unauthorized credentials").

5.  Decoupled product keys, OEM tokens, and unauthorized credentials do not constitute or represent licenses for Microsoft software.  They are merely technology tools that Microsoft provides customers and its supply chain partners to access, install and activate copies of legally licensed software.  When these tools are uncoupled from legally licensed software, disassociated with the devices on which they were authorized to be used, or created without authorization, the tools do not have any independent value other than to deceive unwitting consumers into acquiring copies of pirated and unlicensed software.  That is the case here.

6.  On information and belief, Defendants have reaped substantial profits from their unlawful sales of unauthorized access devices, all while falsely holding themselves out to be legitimate distributors of licensed Microsoft software.  Defendants knew, or had reason to know, that they were facilitating, contributing to, and causing the unlawful copying and distribution of unlicensed Microsoft software.

7.  Defendants' unlawful sale of unauthorized access devices hurts consumers, legitimate commerce, and the software business.  Customers are deceived into purchasing unlicensed and counterfeit copies of software when they think they are buying genuine, licensed software.  Businesses selling genuine licensed software are harmed when potential customers are lured away by lower-priced pirated software offerings.  Microsoft is harmed by Defendants' misuse and theft of its intellectual property.

8. To put a stop to Defendants' scheme and associated unlawful activities and hold them accountable, Microsoft seeks an order permanently enjoining Defendants from further sales of unauthorized access devices and an award of money damages for the substantial harm Defendants have caused.

## II. PARTIES

9. Microsoft is a Washington corporation with its principal place of business in Redmond, Washington. Microsoft develops, markets, distributes, and licenses computer software, among other products and services.

10. On information and belief, Office Solutions is a Florida limited liability company with its principal place of business at 601 Brickell Key Drive, Miami, Florida. Office Solutions advertises and sells Microsoft-branded products through its website at officesolutionsusa.net.

11. On information and belief, Office Solutions is owned, operated by, or otherwise under the substantial control of Trad, who resides in Doral, Florida. On information and belief, Trad, who is a citizen of the state of Florida, is the sole member of Office Solutions. On information and belief, Trad personally participated in and had the right and ability to supervise, direct, and control the wrongful conduct alleged in this Complaint, and he derived a direct financial benefit from that wrongful conduct. Trad is therefore liable for the wrongful conduct alleged herein under principles of secondary liability, including, without limitation, respondeat superior, vicarious liability, and contributory infringement.

## III. JURISDICTION & VENUE

12. The Court has subject-matter jurisdiction over the federal claims alleged herein pursuant to 15 U.S.C. § 1121, 17 U.S.C. § 501, and 28 U.S.C. §§ 1331 and 1338(a). The Court also has subject-matter jurisdiction under 28 U.S.C. § 1332 because this action is between citizens of different states (Washington and Florida), and the matter in controversy exceeds $75,000, exclusive of interest and costs.

13. The Court has personal jurisdiction over Defendants because they reside in the Southern District of Florida and otherwise do business in the district.

## IV.   FACTS

**A.   The Negative Impact of Software Piracy on Consumers, Legitimate Business, and Intellectual Property Rightsholders**

14. The U.S. economy loses billions of dollars in revenues each year from software piracy—namely, the unauthorized and unlawful copying, downloading, and distributing of copyrighted and trademarked software and related components. Software developers, like Microsoft, create hundreds of thousands of technology jobs and are significant drivers of economic growth across the United States and globally. The theft of intellectual property negatively impacts software companies' revenues and the economic growth of countries around the world.

15. Software piracy also victimizes consumers who believe they are purchasing genuine, fully licensed products. As occurred in this case, distributors of pirated software deceive consumers by going to great lengths to make the software appear to be licensed and authorized by Microsoft and advertising it as such.

16. Legitimate technology businesses that follow the rules are also harmed by software piracy because their business is displaced by cheaper offerings from dishonest vendors who do not acquire and pay for licensed software.

**B.   Microsoft's Intellectual Property**

17. Microsoft develops, advertises, markets, distributes, and licenses a number of computer software programs. One of the methods that Microsoft uses to distribute software is digital downloads through Microsoft.com and authorized electronic-software distribution vendors.

18. Microsoft sells licenses to use its software; it does not sell the software itself. Microsoft's software licensing agreements make clear to end users that they are acquiring a license to use the software and not title to the software. The licensing agreements contain

limitations around the use of the software and place restrictions on transfer of the software license and accompanying components.

19. Microsoft's software programs include the following, among others:

a) **Microsoft Office 2019:** Microsoft has developed, and advertises, markets, distributes, and licenses a suite of productivity software for business, home, and education use called Microsoft Office 2019 ("Office 2019"). Office 2019 is available in a number of different versions, each of which includes certain combinations of products, programs, and features. Versions of Office 2019 include Office 2019 Professional Plus, Office 2019 Home & Student, and Office 365 Professional. Microsoft holds a valid copyright in Office Professional Plus 2019, the most expansive version of Office 2019. This copyright encompasses all versions of Office 2019. Microsoft's copyright in Office Professional Plus 2019 was duly and properly registered with the United States Copyright Office, bearing the number TX 8-640-200, a true and correct copy of which is attached hereto as **Exhibit 1**.

b) **Microsoft Project 2019:** Microsoft has developed, and advertises, markets, distributes, and licenses a software program of project management called Microsoft Project 2019 ("Project 2019"). Microsoft holds a valid copyright in Microsoft Project Professional 2019, the most expansive version of Project 2019. This copyright encompasses all versions of Project 2019. Microsoft's copyright in Microsoft Project Professional 2019 was duly and properly registered with the United States Copyright Office, bearing the number TX 8-727-066, a true and correct copy of which is attached hereto as **Exhibit 2**.

c) **Microsoft Visio 2019:** Microsoft has developed, and advertises, markets, distributes, and licenses a software program for diagramming and vector graphics called Microsoft Visio 2019 ("Visio 2019"). Microsoft holds a valid copyright in Microsoft Visio Professional 2019, the most expansive version of Visio 2019, and this copyright encompasses all versions of Visio 2019. Microsoft's copyright in Microsoft Visio Professional 2019 was duly

and properly registered with the United States Copyright Office, bearing the number TX 8-727-070, a true and correct copy of which is attached hereto as **Exhibit 3**.

        d)    **Microsoft Windows 10:**  Microsoft has developed, advertises, markets, distributes, and licenses a computer operating system called Microsoft Windows 10 ("Windows 10").  Windows 10 is available in a number of different versions including Windows 10 Ultimate, Windows 10 Professional, Windows 10 Home Premium, and Windows 10 Enterprise. Microsoft holds a valid copyright in Windows 10 (Spring 2020 Update), the most expansive version of Windows 10.  As a result, Microsoft's copyright in Windows 10 (Spring 2020 Update) encompasses all other versions of Windows 10.  Microsoft's copyright in Windows 10 (Spring 2020 Update) was duly and properly registered with the United States Copyright Office, bearing the number TX 8-890-546, a true and correct copy of which is attached hereto as **Exhibit 4**.

      20.    Microsoft has developed, advertises, markets, distributes, and licenses the above software and related components using various trademarks and service marks, and uses these marks to distinguish Microsoft's software and related components from the software or products of others in the same field or related fields.  Relevant to this case, Microsoft has duly and properly registered a number of trademarks and service marks in the United States Patent and Trademark Office on the Principal Register, including:

        a)    "MICROSOFT," Trademark and Service Mark Registration No. 1,200,236 for, inter alia, computer programs and computer programming services, a true and correct copy of which is attached hereto as **Exhibit 5**.

        b)    "WINDOWS," Trademark Registration No. 1,872,264 for, inter alia, computer programs and manuals sold as a unit, a true and correct copy of which is attached hereto as **Exhibit 6**.

        c)    "MICROSOFT CORPORATE COMPOSITE LOGO," Trademark and Service Mark Registration No. 4,552,363, for, inter alia, computer software, a true and correct copy of which is attached hereto as **Exhibit 7**.

  d) "MICROSOFT CORPORATE LOGO," Trademark and Service Mark Registration No. 4,560,827, for, inter alia, computer software, a true and correct copy of which is attached hereto as **Exhibit 8**.

  e) "OFFICE 2012 DESIGN," Trademark and Service Mark Registration No. 4,459,826, for, inter alia, computer software, a true and correct copy of which is attached hereto as **Exhibit 9**.

  f) "OFFICE WITH OFFICE 2012 DESIGN," Trademark Registration No. 4,456,462, for, inter alia, computer software, a true and correct copy of which is attached hereto as **Exhibit 10**.

  g) "EXCEL," Trademark Registration No. 2,942,050, for, inter alia, computer software, a true and correct copy of which is attached hereto as **Exhibit 11**.

  h) "POWERPOINT," Trademark Registration No. 1,475,795, for, inter alia, computer software, a true and correct copy of which is attached hereto as **Exhibit 12**.

  i) "ONENOTE," Trademark Registration No. 2,844,710, for, inter alia, computer software, also registered under Registration No. 4,251,355.  A true and correct copy of the first-filed ONENOTE trademark registration is attached hereto as **Exhibit 13**.

  j) "OUTLOOK," Trademark Registration No. 2,188,125, for, inter alia, computer software, also registered under Registration Nos. 4,255,129 and 4,423,056.  A true and correct copy of the first-filed OUTLOOK trademark registration is attached hereto as **Exhibit 14**.

  k) "MICROSOFT ACCESS," Trademark Registration No. 1,741,086, for, inter alia, computer software.  A true and correct copy of the first-filed MICROSOFT ACCESS trademark registration is attached hereto as **Exhibit 15**.

  l) "PROJECT LAUNCH ICON (2012)," Trademark Registration No. 4,355,450, for, inter alia, computer software.  A true and correct copy of the first-filed PROJECT LAUNCH ICON (2012) trademark registration is attached hereto as **Exhibit 16**.

m)      "PROJECT LAUNCH ICON (color)," Trademark Registration No. 5,068,834, for, inter alia, computer software. A true and correct copy of the first-filed PROJECT LAUNCH ICON (color) trademark registration is attached hereto as **Exhibit 17**.

n)      "VISIO," Trademark Registration No. 1,838,372, for, inter alia, computer software, also registered under Registration No. 2,063,786. A true and correct copy of the first-filed VISIO trademark registration is attached hereto as **Exhibit 18**.

    **C.**    **Microsoft's Anti-Piracy Tools and Technologies**

21.     One important element of Microsoft's anti-piracy technology is product activation, which involves the activation of software through product activation keys. A Microsoft product activation key is a 25-character alphanumeric string generated by Microsoft and provided to customers and OEMs. When customers and OEMs install copies of certain Microsoft software on a device, they are required to enter a product activation key. As part of the activation process, customers and, in some cases, OEMs, voluntarily contact Microsoft's activation servers over the Internet and transmit their product keys and other technical information about their device to the activation servers.

22.     The activation process is analogous to the activation of credit cards or mobile phones with a code provided by the financial institution or the mobile carrier. Because in certain instances copies of Microsoft's copyrighted software are capable of being installed on an unlimited number of computers, Microsoft relies on the product activation process to detect unauthorized use and protect consumers from the risks of non-genuine software.

23.     Product activation keys are not a software license, nor do they constitute authorization from Microsoft to access or use software without the appropriate license. Product activation is merely technology used by Microsoft to protect its intellectual property from unauthorized use, counterfeiting, and other forms of abuse. Microsoft does not sell or otherwise provide product activation keys separately from licensed software, nor does it authorize others to do so.

24. Some Microsoft programs issue tokens to customers that they use to download and activate copies of the software. Similar to product activation keys, tokens are 25-character alphanumeric strings generated by Microsoft. The associated product activation key does not need to be entered separately as it automatically activates the software when a token is used to download such copy. Like product activation keys, these tokens do not constitute authorization from Microsoft to access or use software without the appropriate license.

25. One prevalent facilitator of unauthorized software use is the unlawful distribution of Microsoft product activation keys that have been decoupled from the software they were authorized to activate. Decoupled product activation keys are frequently "abused," meaning used to activate more copies of software than the license for the software they were intended to activate allows.

26. Similarly, there is a market for the unauthorized distribution of tokens. These tokens enable the holder of the token to download and activate unlicensed and pirated copies of software.

27. Distributors of these keys commonly instruct their customers, as in this case, to download copies of the software from Microsoft or other unauthorized download site and then use the decoupled keys to activate the software. In these instances, the customers downloading copies of the software do not purchase the required software license, and Microsoft is not paid for the software being used. The global black market for decoupled product activation keys generates millions of dollars of illicit revenues for distributors.

**D. Defendants' Unlawful Advertising and Sale of Microsoft Software and Components**

28. As described above, Microsoft's investigations have revealed that Defendants are engaged in the widespread marketing and sale of unauthorized access devices including decoupled product keys, OEM tokens, and unauthorized credentials. Defendants advertise these unauthorized access devices with download links to software which they instruct their customers to use to obtain copies of the software. These download links are either to Microsoft's genuine

9

download sites which their customers are not authorized to use because they do not have a license for the software, or to unauthorized sites containing counterfeit copies of software. In either instance, copying software from these sites constitutes the infringement of Microsoft's copyright-protected software which Defendants induced, enabled, facilitated, and proximately caused.

29. Between November 1, 2019 and September 10, 2020, Microsoft test purchased the below-described unauthorized access devices from Defendants' website at officesolutionsusa.net. Microsoft's trademarks were used, without authorization, on the website and in Defendants' sales materials to market and advertise the Microsoft software associated with the unauthorized access devices. Defendants' use of the Microsoft trademarks was intended to, and likely did, confuse consumers about the origin and authenticity of the software and their entitlement to use the unauthorized access devices.

30. **Test Purchases 1-2:** On November 7, 2019, a Microsoft investigator purchased (a) three copies of Office 2019 Home and Student for $43.66 per copy; and (b) three copies of Office 365 Professional for $46.69 per copy. The results of the test purchase are as follows:

a) Defendants fulfilled the Office 2019 Home and Student order by supplying the investigator with abused OEM tokens for the software and a link to a Microsoft download site that neither Defendants nor their customers were authorized to use to download copies of Microsoft Office software with the OEM tokens distributed by Defendants.

b) Defendants fulfilled the Office 365 Professional order by supplying the investigator with credentials (user names and passwords) unlawfully created for Office 365 subscription accounts that neither Defendants nor their customers were authorized to use to access Microsoft Office software.

31. **Test Purchases 3-5:** On December 11, 2019, a Microsoft investigator purchased (a) two copies of Office 2019 Professional for $136.99 per copy; (b) two copies of Microsoft Project 2019 Professional for $96.76 per copy; and (c) three copies of Microsoft Visio Professional 2019 for $76.69 per copy.

a) Defendants fulfilled the Office 2019 Professional order by supplying the investigator with two decoupled product keys for the Microsoft Developer Network ("MSDN") program. These keys are only authorized for use by a member of the MSDN program and may not be redistributed. Defendants also supplied the investigator with links to one unauthorized download site containing counterfeit software and one Microsoft download site, neither of which Defendants or their customers were authorized to use to download copies of Microsoft Office software using the MSDN program keys distributed by Defendants.

b) Defendants fulfilled the Project 2019 Professional order by supplying the investigator with two tokens for Microsoft Project software associated with the MSDN program. These tokens are only authorized for use by a member of the MSDN program and may not be redistributed. Defendants also supplied the investigator with a link to a Microsoft download site that neither Defendants nor their customers were authorized to use to download copies of Microsoft Project software using the MSDN program tokens for Microsoft Project distributed by Defendants.

c) Defendants fulfilled the Visio Professional 2019 order by supplying the investigator with three tokens for Microsoft Visio software associated with the MSDN program. These tokens are only authorized for use by a member of the MSDN program and may not be redistributed. Defendants also supplied the investigator with a link to a Microsoft download site that neither Defendants nor their customers were authorized to use to download copies of Microsoft Visio software using the MSDN program tokens distributed by Defendants.

32. **Test Purchases 6-8:** On September 10, 2020, a Microsoft investigator purchased from Defendants' website (a) one copy of Visio Professional 2019 for $163.00; (b) one copy of Project Professional 2019 for $168.76; and (c) one copy of Windows 10 Professional 10 for $99.96.

a) Defendants fulfilled the Visio Professional 2019 order by supplying the investigator one decoupled product key that was authorized for use only by qualified educational users and not authorized for redistribution. Defendants also supplied a link to an unauthorized

download site containing counterfeit software that neither Defendants nor their customers were authorized to use to download copies of Microsoft Visio software using the decoupled academic product key distributed by Defendants.

   b)  Defendants fulfilled the Project Professional 2019 order by supplying the investigator with an MSDN token that was authorized for use only by the MSDN program customer to whom it was provided and was not authorized for redistribution. Defendants also supplied a link to a Microsoft download site that neither Defendants nor their customers were authorized to use to download copies of Microsoft Project software using the MSDN tokens distributed by Defendants.

   c)  Defendants fulfilled the Windows 10 Professional order by supplying the investigator with one decoupled product key that was authorized for use only by qualified educational users and not authorized for redistribution. Defendants also supplied the investigator with a link to a Microsoft download site that neither Defendants nor their customers were authorized to use to download copies of Microsoft Windows 10 software using the decoupled academic product key distributed by Defendants.

**V. CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**Contributory Copyright Infringement**
**17 U.S.C. § 501**

33. Microsoft re-alleges paragraphs 1 through 32 as though fully set forth in this Cause of Action.

34. Microsoft is the sole owner of the software programs listed in paragraphs 19 and of the corresponding copyrights and Certificates of Registration with the registration numbers listed in those paragraphs.

35. Defendants' customers unwittingly have infringed and continue to infringe Microsoft's copyright-protected software by using unauthorized access devices to download, copy, and activate Microsoft software.

36. Defendants materially contribute to their customers' infringement by knowingly and intentionally sourcing and reselling decoupled product keys to be used by their customers to facilitate the downloading, copying, and activation of Microsoft's copyright-protected software from unauthorized and counterfeit download sites.

37. At a minimum, Defendants acted with willful blindness to, or in reckless disregard of, Microsoft's intellectual property rights.

38. On information and belief, Defendants have committed, and continue to commit, acts contributing to the infringement of the Microsoft copyrights described above.

39. As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages and Defendants' profits attributable to the infringement. Alternatively, Microsoft is entitled to statutory damages under 17 U.S.C. § 504(c).

40. The Court should enhance an award of statutory damages in accordance with 17 U.S.C. § 504(c)(2).

41. Microsoft is further entitled to injunctive relief and to an order impounding all unlawfully obtained product-activation keys. Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) Microsoft's copyright is unique and valuable property that has no readily determinable market value; (b) Defendants' infringement harms Microsoft such that Microsoft could not be made whole by any monetary award; and (c) Defendants' wrongful conduct, and the resulting damage to Microsoft, is continuing.

**SECOND CAUSE OF ACTION**
**Trademark Infringement**
**15 U.S.C. § 1114**

42. Microsoft re-alleges paragraphs 1 through 32 as though fully set forth in this Cause of Action.

43. Defendants' activities constitute infringement of Microsoft's federally registered trademarks with the registration numbers listed in paragraph 20. Microsoft advertises, markets,

distributes, and licenses its software and related components under the trademarks described above and uses these trademarks to distinguish Microsoft's software and related components from the software or products of others in the same or related fields.

44. Because of Microsoft's long, continuous, and exclusive use of these trademarks, they have come to mean—and are understood by customers, end users, and the public to signify—software programs and related components or services of Microsoft.

45. Defendants have been, and continue to be, involved in using Microsoft's registered trademarks in advertising, marketing, and offering Microsoft product keys to be used by customers without Microsoft's authority to activate pirated and unlicensed software. Defendants are not licensed to use these registered trademarks.

46. Defendants' use of the trademarks in advertising, marketing, and offering software and product keys is likely to cause confusion, mistake, or deception as to the product keys' source, origin, or authenticity and the source, origin, or authenticity of the pirated and unlicensed software that Defendants contribute to and induce their customers to download and activate.

47. Further, Defendants' activities are likely to lead others to conclude, incorrectly, that the infringing materials that Defendants are advertising, marketing, installing, offering, and distributing originate with or are authorized by Microsoft, thereby harming Microsoft, its licensees, and the public.

48. At a minimum, Defendants acted with willful blindness to, or in reckless disregard of, Microsoft's registered marks.

49. As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages, Defendants' profits attributable to the infringement, and treble damages and attorney fees under 15 U.S.C. § 1117(a) and (b).  Alternatively, Microsoft is entitled to statutory damages under 15 U.S.C. § 1117(c).

50. Microsoft is further entitled to injunctive relief and to an order compelling the impoundment of all infringing and unauthorized materials.  Microsoft has no adequate remedy at

law for Defendants' wrongful conduct because, among other things: (a) Microsoft's trademarks and service mark are unique and valuable property that have no readily determinable market value; (b) Defendants' infringement constitutes harm to Microsoft's reputation and goodwill such that Microsoft could not be made whole by any monetary award; (c) if Defendants' wrongful conduct is allowed to continue, the public is likely to become further confused, mistaken, or deceived as to the source, origin or authenticity of the infringing materials; and (d) Defendants' wrongful conduct, and the resulting harm to Microsoft, is continuing.

### THIRD CAUSE OF ACTION
### False Designation of Origin; False and Misleading Representations and Descriptions of Fact
### 15 U.S.C. § 1125

51. Microsoft re-alleges paragraphs 1 through 32 as though fully set forth in this Cause of Action.

52. Defendants have made false and misleading representations and descriptions of fact in connection with the offering for sale and sale of unlawfully obtained and unauthorized access devices to Microsoft software, including without limitation, decoupled product keys, OEM tokens, program keys, and unauthorized credentials.

53. Defendants' false and misleading representations and descriptions of fact were made in commercial advertising or promotion, including without limitation, in connection with the offer for sale and sale of unlicensed pirated Microsoft software.

54. Defendants' false and misleading representations and descriptions of fact misrepresent the nature, characteristics, qualities, or origin of the Microsoft software they advertise and distribute.

55. Defendants' use of Microsoft's name and trademarks and its false and misleading representations and descriptions of fact in interstate commerce in connection with its offer for sale of unlicensed pirated Microsoft software has either deceived or has the capacity to deceive a substantial segment of potential consumers. This deception is material because it is likely to influence consumers' purchasing decisions.

56. Defendants have used, and continue to use, Microsoft's name and trademarks referenced above to compete unfairly with Microsoft and to deceive customers.

57. Defendants' conduct constitutes false designation of origin and descriptions, in violation of 15 U.S.C. § 1125(a).

58. Defendants' wrongful conduct is likely to continue unless the Court restrains and enjoins it.

59. As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages, Defendants' profits, and treble damages and attorney fees according to 15 U.S.C. § 1117.

60. Microsoft is also entitled to injunctive relief and to an order directing Defendants to stop marketing and advertising that they are providing legally licensing Microsoft software. Microsoft has no adequate remedy at law for Defendants' wrongful conduct because, among other things: (a) Defendants' advertising, marketing, installation, or distribution of unlicensed Microsoft software constitutes harm to Microsoft such that Microsoft could not be made whole by any monetary award; and (b) Defendants' wrongful conduct, and the resulting damage to Microsoft, is continuing.

## FOURTH CAUSE OF ACTION
### Trade Dress Infringement
### 15 U.S.C. § 1125

61. Microsoft re-alleges paragraphs 1 through 32 as though fully set forth in this Cause of Action.

62. Microsoft's trade dress—specifically, the design for its software—is used in commerce, is non-functional, is inherently distinctive, and has acquired secondary meaning in the marketplace.

63. Microsoft's trade dress has acquired secondary meaning in the marketplace as a result of Microsoft's extensive advertising, Microsoft's sales success, and the length and

exclusivity with which Microsoft has used its product packaging and design, among other factors.

64. Defendants are unfairly competing with Microsoft by adopting and advertising infringing trade dress to identify their goods and services.

65. The intent and result of Defendants' actions are to create the impression and perception that Defendants' goods and services emanate from or are endorsed by Microsoft, causing confusion, mistake, and deception among the public as to the source and origin of those goods and services.

66. Defendants' actions are intended to cause, have caused, and are likely to cause confusion, mistake, deception among consumers, the public, and the trade who recognize and associate Microsoft trade dress with Microsoft.

67. Moreover, Defendants' conduct is likely to cause confusion, to cause mistake, or to deceive consumers, the public, and the trade as to the source of the infringing products, or as to a possible affiliation, connection, or association between Microsoft, Defendants, and the infringing products.

68. Defendants' use of an infringing trade dress has caused, and unless restrained, will continue to cause injury to Microsoft.

69. By using the same or a confusingly similar trade dress, Defendants have misrepresented the nature, origin, characteristics, and quality of their products, in violation of the Lanham Act (15 U.S.C. § 1125(a)).

70. By reason of Defendants' actions, Microsoft has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law, and thus, Microsoft is entitled to injunctive relief.

71. As a result of Defendants' wrongful conduct, Microsoft is entitled to recover its actual damages, Defendants' profits, and treble damages and attorney fees pursuant to 15 U.S.C. § 1117.

**PRAYER FOR RELIEF**

Microsoft respectfully requests that the Court grant Microsoft the following relief:

(A)   Judgment in Microsoft's favor on all claims;

(B)   An order restraining and enjoining Defendants, their directors, principals, officers, agents, representatives, employees, attorneys, successors and assigns, and all others in active concert or participation with them from further violating Microsoft's rights with the form and scope of an injunction to be determined according to proof at trial;

(C)   An order under 15 U.S.C. § 1116 and 17 U.S.C. § 503 impounding all counterfeit or infringing copies of purported Microsoft software or any product-activation keys that can be used to create the same and any related item, including business records, that are in Defendants' possession or under their control;

(D)   An order declaring that Defendants hold in trust, as constructive trustees for the benefit of Microsoft, the illegal profits obtained from their distribution of counterfeit and infringing copies of Microsoft's software and requiring Defendants to provide Microsoft a full and complete accounting of all amounts due and owing to Microsoft as a result of Defendants' unlawful activities;

(E)   An order requiring that Defendants pay all general, special, actual, and statutory damages that Microsoft has sustained, or will sustain, as a consequence of their unlawful acts, and that such damages be enhanced, doubled, or trebled as provided by 17 U.S.C. § 504(c) and 15 U.S.C. § 1117(b);

(F)   An order requiring Defendants to pay to Microsoft the costs of this action and the reasonable attorneys' fees incurred in prosecuting it, as provided by 15 U.S.C. § 1117 and 17 U.S.C. § 505; and

(G)   An order granting all other relief as the Court deems just and equitable.

DATED: November 2, 2020				Respectfully Submitted,

						s/Brian W. Toth
						Brian W. Toth
						Florida Bar No. 57708
						btoth@gsgpa.com
						Natalia B. McGinn
						Florida Bar No. 1011385
						nmcginn@gsgpa.com
						GELBER SCHACHTER & GREENBERG, P.A.
						1221 Brickell Avenue, Suite 2010
						Miami, Florida 33131
						Phone: (305) 728-0950
						E-service: efilings@gsgpa.com


						Bonnie E. MacNaughton (*pro hac vice forthcoming*)
						BonnieMacNaughton@dwt.com
						Nathan Rouse (*pro hac vice forthcoming*)
						NathanRouse@dwt.com
						DAVIS WRIGHT TREMAINE LLP
						920 Fifth Avenue, Suite 3300
						Seattle, WA 98104
						Phone: (206) 622-3150

						*Counsel for Plaintiff Microsoft Corporation*